**KURLASH CO., Inc., v. MARVELASH CO., Inc., et al.**

**No. 4301.**

District Court, D. Massachusetts.
March 30, 1937.

George K. Woodworth, of Boston, Mass., for plaintiff.

Eiffel B. Gale, of Boston, Mass., for defendants.

SWEENEY, District Judge.

This is a suit in equity in which the petitioner seeks an injunction, an accounting, and treble damages by reason of alleged infringement by the respondents of the petitioner's patents.

Statements of fact herein are intended as findings of fact, and statements of legal conclusions, as rulings of law, under the equity rules.

The title to each of the patents in suit is vested in the petitioner, and was acquired prior to the date of the issuance of the last of them. The validity of the petitioner's patents is not contested. Although the petitioner declared on three patents, patent No. 1,527,964 has been withdrawn from its bill without prejudice. The devices covered by the other two patents are eyelash crimpers or curlers. Prior to the issuance of patent No. 1,542,014, hereinafter referred to as the Stickel patent, it was not the fashion of women to crimp or curl their eyelashes, although other methods had been used to make the eyes and eyelashes more attractive. Stickel conceived the idea that by crimping or turning up the lashes of the upper lid, a woman's beauty might be enhanced, and he made some claim to the effect that her vision would be thereby improved. Whether or not he actually improved upon the work of nature in its concept of the proper means, and the arrangement of such means, by which a person should see, need not be decided. There is little doubt that those persons who purchased and used this, or any other eyelash curler, were actuated more by a desire to attain beauty than that their vision should be improved. In any event, Stickel conceived the idea, and secured the patent referred to. This was the beginning of eyelash crimping, either in its idea or in its effect, and the patent granted to Stickel was a pioneer patent in the full sense of the word. No prior art was cited by the Patent Office. That patent was granted June 16, 1925. The only claim involved in this suit is claim 13.

This crimper or curler was put on the market in 1922, and mechanically it was rather an awkward device to use. The public was skeptical, never having seen nor heard of a mechanical device for bending eyelashes, and much money had to be spent to "educate the public." Women appeared to be averse to clamping anything on their eyelashes for fear of injury thereto, or for fear that the turned-up lashes would allow dust to get into and injure their eyes. Eventually, due to an extensive advertising campaign, this well-founded prejudice was overcome.

The operation of the Stickel device was of a delicate nature, and consisted of placing a pivotally-connected curved clamp on the eyelashes by means of a tweezer-like set of pins which fitted into sleeves attached to each of the two jaws of the clamp.

Omitting the Patino patent (withdrawn) as being the next chronological step in the development of eyelash crimping, Stickel and McDonell applied for and were granted letters patent No. 1,699,084, covering an improvement in eyelash curlers. This was issued on January 15, 1929, and is the second of the petitioner's patents. Claims 1 and 2 are the ones relied on by the petitioner. It was a vast improvement over the Stickel patent inasmuch as it was unitary in structure, and could be more easily manipulated and with less danger of injury to the eyes. The time required for crimping or curling was minimized. Whereas the original Stickel patent served to bend the eyelashes (and sometimes break them) because the lashes were clamped between two metallic jaws, the Stickel and McDonell patent provided more of a curl since the lower jaw of the device contained a piece of resilient rubber into which the lashes might be forced by the upper jaw. In operation the device is held firmly. The operating means are below the jaws, and a movement of the lower jaw with respect to the upper is a straight line movement, the hand of the operator resting against the cheek during the crimping operation. A further improvement was that the Stickel and McDonell device is adapted for curling eyelashes, regardless of the thickness of the hairs because of the resiliency of the rubber in the lower jaw. Further, the Stickel and McDonell device could be made in one size, whereas under the Stickel patent it had to be made in at least three sizes. After the Stickel and McDonell device has been used for a short period of time, a groove is worn into the rubber facing of the lower jaw, and this groove facilitates the crimping of the lashes placed into it.

Until November, 1934, no competing device was on the market, and the field seems to have been exclusively controlled by the petitioner, but since that time other crimping or curling devices have been introduced into the market, including that of the respondents.

■ The real question in this case is whether the respondents' device infringes the petitioner's because it comes within the range of equivalents to which the petitioner is entitled either by reason of being a pioneer invention or otherwise. It is clear that the Stickel patent was a pioneer invention. As such, it is entitled to a broad range of equivalents. Miller v. Eagle Manufacturing Co., 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121; Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122.

■ Claim 13 of the Stickel patent reads as follows:

"An eyelash crimper comprising two jaws which are curved concentrically and movable toward and from each other and receive the eye lashes between them, the direction of movement of said jaws being substantially parallel with the axes of the same."

The alleged infringing device, which will be described later herein, does not operate on pivotally connected jaws, and the respondents contend that the Stickel patent is limited to a device having a pair of pivotally connected jaws. While the phraseology of the patent application seems to indicate that the applicant had in mind the use of pivotally connected jaws, nevertheless, in submitting claim 13, which was submitted about six months after his original application, Stickel stated, "We wish to say that the same covers substantially the same ground as original claim 1, which has already been favorably acted upon, with the exception that this new claim * * * is not limited to a structure in which the jaws are pivotally connected, but sufficiently broad to cover any structure having curved jaws which are movable toward and from each other."

The respondents undoubtedly feel that strength is added to their contention by the fact that the drawings accompanying the application, and copies of which were attached to the patent as issued, show pivotally connected jaws. However, it is noted in line 30, page 1, of the patent that the applicant refers to these figures as *one form* (italics mine) of eyelash crimper. I am of the opinion that neither within the phraseology of claim 13 when read in conjunction with the file wrapper, nor within the range of equivalents to which this inventor is entitled is he limited in that claim to pivotally connected jaws. He is entitled to a reasonable construction of the words of that claim, and to the use of well-known and similar mechanical equivalents in the interpretation of this claim.

The alleged infringing device of the respondents consists of two jaws curved so as to fit about an eyelid. The upper jaw is of metal, and the lower jaw is of tubular solid rubber incased in a rubber sleeve, affixed to the lower jaw at its ends, and resting in a metal base or guide. The two jaws are mechanically joined by flanges, at the ends of the lower jaws, fitting into sleeves or grooves attached to the ends and below the upper jaw. As the jaws are closed or opened, the flanges of the lower jaw ride in, and are guided by the groove attached to the upper jaw.

As has been previously pointed out in considering the Stickel and McDonell patent, the use of rubber in the lower jaw accomplishes a true curling as distinguished from a bending of the lashes. The use of the rubber base in the respondents' device is a substantial departure from the method used and claimed by Stickel. This is not a mere colorable departure, for, as a practical matter, the alleged infringing article successfully performs the function for which it was intended, whereas the Stickel patent was crude both in its operation, and in its effect. The Stickel patent bent eyelashes, whereas the respondents' device curled them. Curling was the result sought to be achieved, and the respondents' device embraces a new form or new method to reach its objective, and therefore does not infringe the Stickel patent.

I therefore rule that the Stickel patent, No. 1,542,014, is valid, but not infringed.

Claims 1 and 2 of the Stickel and McDonell patent are relied on by the petitioner. Those claims are as follows:

"1. An eyelash curler comprising two jaws which are curved to fit about an eyelid and to receive eyelashes between them, one of said jaws having a body provided with a channel and an elastic facing arranged in the same channel and projecting beyond the same, and the other jaw consisting of a bar arranged opposite said elastic facing, and means for moving said jaws toward and from one another."

"2. An eyelash curler comprising two jaws which are adapted to receive eyelashes between them and means for moving said jaws toward and from one another comprising a support having two side bars which are connected with opposite ends of one jaw, and sleeves movable lengthwise on said bars and arranged on the ends of the other jaw."

The public did not receive the Stickel patent with any great degree of enthusiasm. It was slow to accept the idea of curling eyelashes. The delicate nature of, and the danger in, the steps necessary to use the Stickel invention, and the poor result achieved by it, made progress slow. Mere education of the public to the new fashion of rearranging the eyelashes so that they would become a thing of beauty was not enough. It was seen by the owners of the Stickel patent that to reach commercial success they must find something that could be more readily used, and which would have better results. Stickel and McDonell then invented, and were issued patent No. 1,-699,084 for a device which consisted of a single unit as distinguished from the Stickel crimper with its separate jaws and tongs or tweezers. It could be rested against the face by the person using the device, and, in a few seconds, provide the curl of beauty to the lashes. After the production of the Stickel and McDonell patent, success was met commercially. More than three million units have been sold since its appearance on the market as against three thousand of the earlier Stickel invention.

The Stickel and McDonell patent covers a device comprising two jaws which move to and away from each other by means attached thereto. The upper jaw is of metal, and the lower jaw has a base of wider rubber inserted in a metal channel so that the upper jaw strikes against and into the rubber of the lower jaw when compressed. At the ends of the lower jaw are sleeves or rings which fit about uprights attached to the ends of the upper jaw. These sleeves or rings slide along the uprights, and guide the movement of the lower jaw as it approaches, and is withdrawn from the upper jaw. The alleged infringing device, previously described, departs only from the Stickel and McDonell device in that the lower jaw is conducted to and from the upper jaw by flanges operating in grooves instead of the ring or sleeve sliding up and down the bar, and, secondly, in that the lower jaw of rubber is not inserted in a deep channel, but rests upon a metal base. The respondents' device at best is a mere colorable departure from the Stickel and McDonell patent. These respondents have appropriated the petitioner's idea and structure. The changes that they have made, may, or may not, be an improvement over the patented articles, but they are changes merely of structure or degree by the sub-

stitution of mechanical equivalents which do not depart from a reasonable interpretation of the language contained in the claims. The respondents' device has the same mode of operation, is based on the same inventive idea, and element for element is covered by claims 1 and 2 of the Stickel and McDonell patent.

I therefore find and rule that the Stickel and McDonell patent, No. 1,699,084, is valid, and infringed. The petitioner is entitled to an injunction, and an accounting. A decree may be prepared in accordance with the above.