## THOMPSON et al. v. WESTINGHOUSE ELECTRIC & MFG. CO. et al.
### No. 2573.

District Court, D. Connecticut.
Nov. 9, 1939.

Irving Seidman, of New York City (John M. Crane and Joseph W. Hazell, both of New York City, of counsel), for plaintiffs.

Walfrid G. Lundborg and Shipman & Goodwin, all of Hartford, Conn. (John C. Kerr and Allan C. Bakewell, both of New York City, of counsel), for defendants.

INCH, District Judge.

This is a patent suit brought by the above named plaintiffs, but the only plaintiff that is properly before the court is the inventor Frank W. Thompson. There are three defendants. One of them, the Chance Vought Aircraft Corporation, is a department or division of the defendant United Aircraft Corporation. The United is a manufacturer of aeroplanes and in its work uses an electric spot-welding machine. The duration of the current flow during the welding period of this machine is under the control of an electronic timer concededly manufactured by defendant Westinghouse Electric & Manufacturing Company, and there is sufficient in the record to proceed to consider its liability, if any, as a contributory infringer.

Thompson applied for his patent April 12, 1922. He received his patent, U. S. Patent No. 1,695,302, December 18, 1928. In this patent Thompson states that his invention relates to electric heating "more particularly to a method for heating electro-conductive articles comprising the passage of electricity therethrough, and an apparatus for carrying out the new method".

The patent has 40 claims, but Thompson rests this action on but one of these claims. This is Claim 32 and reads as follows:

"The method of heat treating a work-piece employing a work-circuit, means for conducting an electromotive force derived from the work circuit to establish a current to heat the work-piece, and means operating automatically upon the elapse of a predetermined time interval from the application of the electromotive force to discontinue said work circuit and sequently disconnecting the first mentioned means to effect release of the work-piece."

Thompson attended the trial but did not testify. It plainly appears that this patent is a paper patent. There is no proof that any apparatus for carrying out the alleged new method for heating electro-conductive articles was ever built by Thompson or anyone else. On the contrary, the impression is strong, so far as I am concerned, that this attempt to fasten on an industry liability for patent infringement rests on an effort to extend the patent far beyond its proper limits by means of an obscure theory of "heat treatment" as vaguely set forth in said Claim 32.

Counsel for plaintiff asserts that Thompson teaches two ways of adding "time control of heating to sequence control of steps". One way is control by a solenoid-dashpot, the other is, what counsel calls, "chronological time" control. The prior art patents, it is claimed, show "sequence" but not "control by predetermined time" unless, as in one of the Heany patents, hereafter mentioned, something is added which is not there shown. Counsel further contends that Claim 32, here relied upon, is not anticipated by such prior art because, for the first time, Thompson showed employment of "time control of heating, in sequence control of steps" and that he was the first to teach control of the heating current by time control. Finally that Claim 32 is not subject to limitation and must be construed broadly for it discloses a "new control of heating period". Adding the step of welding, they claim, to a machine using Thompson's idea does not avoid infringement.

In order to give substance to such assertions of counsel, recourse would necessarily be expected to be made to the specifications and drawings. So far as I can see from the proof offered, plaintiff practically abandons the specifications and drawings. There is nothing in Thompson's specifications by which one skilled in the art could even indirectly learn to

make a "spot welder" such as is used by the defendant, yet, this is the real issue here. Incandescent Lamp Patent, Consolidated Electric Light Co. v. McKeesport Light Co., 159 U.S. 465, 16 S.Ct. 75, 40 L.Ed. 221; Preston v. Manard, 116 U.S. 661, 6 S.Ct. 695, 29 L.Ed. 763; Bene v. Jeantet, 129 U.S. 683, 9 S.Ct. 428, 32 L.Ed. 803.

■ There must be a disclosure by the patent to the art which can be used and which plaintiffs claim has been improperly used by a defendant. Grubman Engineering & Mfg. Company v. Goldberger, 2 Cir., 47 F.2d 151. Baker Perkins Company v. Thomas Roulston, Inc., 2 Cir., 62 F.2d 509.

Consequently it is not possible to simply take Claim 32 and give it the broad interpretation that Thompson contends for. The question of infringement of a "spot welding machine" of a type which in various forms has been in commercial use long before the date of Thompson's patent is not answered by any disclosure in the specifications of Thompson or his drawings.

■ Moreover, considering Thompson's patent as a paper patent, for there is no proof of any commercial use, it must be strictly construed. Cocks et al. v. Rip Van Winkle Wall Bed Company, 9 Cir., 28 F.2d 921; Continental Paper Bag Co. v. Eastern Paper Bag Company, 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122.

The "welding machine" used by the United Aircraft Corporation, and in which the timer of the Westinghouse is a part, is not only wholly different from any disclosure in the Thompson patent, but it could not be constructed or used in accordance with either the method or performance of Thompson's idea. The sequence control in defendant's machine is essential to it for only in this way is the danger of an arc at the electrodes avoided. Such an arc if it occurred in defendant's machine would not only damage the workpiece, but possibly seriously damage the machine itself. It is essential in defendant's machine, with its sequence control, that the current go on while the electrodes are closed and the current go off before the electrodes are open. By use of the foot pedal of defendant's machine the welder will go through its cycle automatically to weld the piece of metal and it then completely cuts off the current, although the operation is an exceedingly quick one, and the finished weld is then released.

As the expert, for the defendant, Mr. Schwarz, testified "any machine constructed according to Thompson's teaching if such machine could be constructed, could not be a 'welding machine' for the destructive arcing present according to Thompson caused by the current being still on when the electrodes open, would make its operation impossible as a welder".

In a "spot welder" the surfaces of two pieces of metal are "fused" together at the point of contact. The metal of each at this point is actually melted by the intense heat generated by the resistance set up in the contact of the two pieces. This spot or fusion is localized and forms a bubble of melted metal. This is something entirely different from merely heating, below the point of fusion, of a bar or rivet or similar work piece. Disclosure of the necessary means for this peculiar and important contact resistance and necessary fusion at a single spot is not disclosed directly or indirectly in Thompson's patent.

Heating a rivet or a bar is entirely different from spot welding. Rivets are taken from the heating machine while hot and inserted while still hot through the holes in the plates to be joined and then the ends of the rivets are hammered to hold the plates together. Spot welding on the other hand melts or fuses the plates at certain small spots thus eliminating any rivet or similar means. Neither the electrodes nor the dual system of circuits nor the electrode release and circuit changer indicated by Thompson can or should be used to stretch the Thompson patent (Claim 32) to cover such a machine or method as the defendants use.

While Claim 32 is simply a "method" claim, it must be confined to an operation which is entirely foreign to a "spot welder". In spite of the fact that Thompson's patent has never been put into actual form of a machine and is at most a vague suggestion as to a possible method of electric heating whatever would come from someone skilled in the art attempting to follow such suggestion or to make a machine for spot welding would, under no circumstances, be sufficient to accomplish or even disclose the successful method and operation of defendant's spot welder.

Such an abstract and obscure claim as 32 therefore cannot here be depended upon to show infringement on the part of the defendants in the use of their spot welding machine. The claim relied upon must be construed in connection with the specifications and drawings and not extended beyond them.

The prior art shows a number of welding machines disclosing time control of heating combined with sequence controlled steps. Such machines have been in use for a long time at Schenectady, Lynn and Cleveland. This has been so approximately since 1915, seven years before Thompson.

Mere time control of heat with sequence control of steps was known long before Thompson and not only is disclosed in prior patents but some machines were in actual use. Heany, No. 1,050,827, No. 1,061,378, No. 1,078,675 (1913), No. 1,153,384 (1915).

Accordingly, I am satisfied that plaintiffs have failed to show any infringement, by defendants, of the Thompson patent.

While some doubt may be expressed as to the validity of Claim 32 of the patent by itself, it seems unnecessary to decide such question as it is but one with 39 other claims not here involved and also in view of the fact that there is no infringement proven. The complaint must be dismissed.

Complaint dismissed with costs. Submit findings of fact and conclusions of law.