## ADVANCE RUMLEY CO. v. JOHN LAUSON MFG. Co.

(Circuit Court of Appeals, Seventh Circuit. March 15, 1921. Rehearing Denied August 19, 1921.)

### No. 2815.

1. Patents ⬩328—812,371, for special regulator for explosive engines, held not infringed, and claim 17 invalid.

Secor patent, No. 812,371, claims 1, 3, 5, 13, covering a "special regulator for explosive engines," *held* not infringed, and claim 17 invalid.

2. Patents ⬩157(1)—Patentee has right to be own lexicographer.

A patentee has the right to be his own lexicographer, and the court will unhesitatingly accept a definition of the patentee if ascertainable from the patent, if by doing so it can give better or more accurate effect to the claims.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Bill by the Advance Rumley Company against the John Lauson Manufacturing Company. From an adverse decree, plaintiff appeals. Affirmed.

Francis W. Parker and Robert H. Parkinson, both of Chicago, Ill., for appellant.

Edwin B. Hunt, of Milwaukee, Wis., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge. The present appeal deals with a patent, No. 812,371, to J. A. Secor, and covers a "special regulator for explosive engines." In disposing of the suit, Judge Geiger gave reasons for his conclusions that so satisfactorily present the issues involved that we set them forth in full.[1]

---

[1] The plaintiff, as owner of the patent to Secor, No. 812,371, issued February 13, 1906, brings this suit against defendant charging infringement. The usual defenses, invalidity and noninfringement, are interposed:

The patentee asserts his invention to relate:

"Generally to internal combustion or explosion engines, and particularly to that class of such engines as employ a nonvolatile liquid fuel—such, for example, as commercial kerosene oil—one object of this invention being to correlate under a common unitary control the several recurrent cyclic operations

[1] We agree with the findings and conclusions reached, and adopt the opinion.

While this might well dispose of the appeal, we will, in view of counsel's argument most earnestly urged in support of certain attacks upon the opinion, briefly refer to two contentions.

The decision, so far as it relates to claims 1, 3, and 5, turns upon the presence of the three "throttling-valves" as elements in the combination. Appellant's counsel frankly state in their brief:

"The defense against the charge of infringement rests mainly on the argument that the claims (especially 1 and 3) should be limited to the direct connection of each throttle valve with the governor, and that the valves which throttle the water and oil are not so connected in defendant's carbure-

which affect speed, power, and fuel consumption. In order to obtain this result, an air throttling-valve, and an electric ignition-timing mechanism are unitedly actuated by means of a common control or governor, so that the separate movements of each of these several mechanisms are co-operatively regulated in unison, the control or governor thereby simultaneously determining the relative proportions of the constituents of the fuel mixture, the volume, and thereby the compression of each charge, the internal temperature of the combustion chamber, and the time of ignition.

"My invention therefor comprises means for obtaining a triple-unit control over, first, the internal heat; second, the transformation of heat into power, and, third, power production, thus the temperature of the combustion-chamber, being regulated by the admixture of finely-atomized water as a constituent element of the fuel charge, and the quantity of water thus supplied for the absorption of excess heat being varied in consonance with the variation in engine speed or power output. As concerns the transformation of heat into power, the proportion of the several ingredients in the fuel mixture are varied with micrometric precision in thermo-dynamic correlation with the degree of compression, and as to power production, the mean effective pressure of the working stroke which determines speed and power, being controlled by varying in correlation the proportions, quantity, and compression of the fuel charge, the time of ignition, and temperature of combustion, secures the improved results."

It is believed unnecessary to give in detail a description of the mechanism by reference to the drawings and numerals, for the case must turn upon the interpretation and effectiveness of the claims sued upon, in view of certain concessions that must be made upon examination of the specifications and the drawing. The principal controversy arises out of the first claim allowed to the patentee:

"1. In an internal-combustion engine the combination of an air throttling-valve, a fuel throttling-valve and a water throttling-valve, with a governor adapted to vary the quantity of the combustible charge, and the relative proportions of air, fuel and water, in co-ordination with the variations in quantity of said charge."

It may be said, preliminarily, in view of the specifications, and certainly of the prior art called to the attention of the court, that the patent in suit can in no aspect be regarded as of a pioneer or dominant character. The patentee professed to enter not only a well-known art, but a well-known branch thereof, namely the class of internal combustion or explosion engines, employing nonvolatile liquid fuel, such as kerosene oil, and his object, although stated in ponderous terms, in truth was limited to dealing with the problem of correlation and common control, over operations "which effect speed, power and fuel consumption," and he announces his solution to reside in these means:

"An air throttling-valve, a fuel throttling-valve, a water throttling-valve, and an electric ignition-timing mechanism are unitedly actuated by means of a common control or governor, so that the separate movements of each of these mechanisms," may be "co-operatively regulated in unison, the control

tor. There is no dispute about the fact that defendant's throttling-valves are not directly connected with or directly operated by, the governor."

The query arises: what are "throttling-valves"?

[2] This court has frequently and consistently recognized the patentee's right to be his own lexicographer, and in the present suit, regardless of the ordinary or the technical meaning of the words "throttling-valve," we will unhesitatingly accept another definition if ascertainable from the patent, if by doing so we can give better or more accurate effect to this or other claims. However, such definition must be as-

or governor thereby simultaneously determining the relative proportions of the constituents," etc.

In other words, he characterizes his invention as a "means for obtaining a triple-unit control."

Claim 1, when read in connection with the description last above noted, which, after all, discloses the patentee's construction and his theory of operation, presents the fundamental question involved in the case, namely, the definition to be accorded to any one or all of the so-called "throttling-valves" introduced into the construction under the claims and their relationship, structurally, and functionally and operatively; and the plaintiff throughout apparently realized the necessity in order to make out a case of infringement, to give to the terms of the claims, in so far as they call for definition of "throttling-valves;" a "governor adapted to vary" and "in co-ordination with." a definition repugnant to the obvious ones, which, in view of the specifications, the patentee intended. In the consideration of this it will be demonstrated, I believe, that the patentee himself not only appreciated but purposed to recognize the distinctive character of a "throttling-valve" and did not intend by the industrious use of that term to comprehend everything which might function as a valve—in the sense of an "opening" through which there was a flow of gas or liquid. He recognized the distinctive character of a throttling-valve just as clearly as defendant's counsel states it in its differentiation from an ordinary "adjusting" or "regulating" valve, viz.: "A throttling-valve is one adapted to be actuated to control and vary a flow of fluid during the operation from no load to full load of the device or machine with which it is used. An adjusting or regulating valve is one initially manipulated or set to determine the size of an opening through which fluid may flow and after predetermined setting has no further function of varying the opening."

If, now, we turn to the specifications and drawings of the patent, and particularly Figures 7 and 8 of the latter, and, without following the detailed description of the construction, the patentee sums up in the following language:

"As will be understood from this description, my invention comprises direct and positive control in due relation with each other of the air supply by means of the valve g, of the fuel supply by means of the valve m, of the water supply by means of the valve j, and of the time of firing by means of the forked arm 30 and its connecting mechanism, all of the said mechanisms being actuated and controlled by the governor automatically—that is to say, without the intervention of any external or independent agency applied from the moment the engine is initially started."

Now, compare with this the language of the patentee when referring to what are now claimed by the plaintiff to be throttling-valves within the meaning of claim 1 of the patent. Particular reference is made to the construction designated by the numeral 73 in Figure 1 of the drawings.

"After the engine has been started into operation and its interior parts have reached normal working temperature, the valve 72 is opened and the reservoir 74 is filled. The valve 72 is opened sufficiently to insure a constant overflow of water through the overflow pipe 75, thereby maintaining a constant level of water in the reservoir 74, even as a constant level of oil is

certained from the use of the words in the specification and claims, and must be in harmony with the asserted advance which the invention represents over the prior art. Examining the specifications as well as the claims, we can find no support for any definition that would ignore the word "throttling." The use of this word is consistent with its ordinary meaning and no other, and its function in the combination is expressive of the asserted advance over existing structures.

Claim 13 reads:

"In an internal-combustion engine adapted to inhale water for internal cooling, the combination of a piston adapted by its suction movement to in-

maintained in the oil reservoir *1*, as the nozzle *77*, connecting pipe *76*, the reservoir *78* and the adjusting screw *78* are alike and bear the same relation to the passageway *H* as the nozzle *80*, passageway *79*, reservoir *81* and adjusting screw *82*. The action of the in-rushing air through the passageway *H* inhales, atomizes and mixes water with the air charge in the manner hereinbefore described in reference to the action of the starting liquid. The passage of each accurately measured governor-controlled air charge past the nozzle *77* draws in a properly proportioned and accurately measured quantity of water sufficient for absorbing the amount of excess heat produced by compression and the heat-radiating action of the walls of the combustion chamber."

The present attempt, being to bring what the patentee specifically terms "nozzle" or adjusting screws within the definition of a throttling-valve constructed as specifically indicated in the patent, and thereby to endow the element of the air throttling-valve with either the dual function of such a valve and a fuel throttling-valve, or the triple function of such a valve and a fuel throttling and a water throttling-valve, is alone sufficient to defeat the plaintiff's contention. This is true because it leads to a combination of the elements of the claim and a bestowal upon one element the functions of either single, dual or triple construction. It is all the more true because, when once the construction noted by the numerals *77*, *78*, *80*, and *82*, which are in fact mere nozzles and adjusting screws, is given either the functions or structural characteristics of a true throttling-valve, the patentee recurs to old art—at least art shown in any number of patents dealing with gasoline car-buretors and engines—and plaintiff in this case will not claim that in such engines the use of an air throttling-valve, co-operating with fuel and water valves of the identical construction disclosed by the numerals last above mentioned, was not old and common-place before the date of Secor's patent.

The entire argument of the plaintiff is directed to substantiating the proposition that, because a construction such as that found in Figure 1, where the numerals *77*, *78*, *80*, and *82*, as plaintiff says, disclose so-called "controlling-valves"—that because such a structure may work out and utilize water and fuel, because of the presence of the charge of air, which latter is controlled by throttle-valve and governor, therefore the construction responds to claim 1. This, however, impresses me as the basic infirmity in its case. Nowhere in the art—in the ordinary gasoline structures—is a set screw, or an adjusting screw, which permanently (until reset manually) limits the flow of gasoline or water, treated as a "throttling-valve." And if it is true, as the patentee claims, with respect to the construction shown in Figure 1, that upon the influence of the air-throttling valve the water and fuel are removed from the openings defined by the set screws—or the nozzles, in so-called "accurately measured quantities," then the same thing was true of the prior art structures. But it is also true that such result was not attributable to the construction of an adjusting screw nozzle, and therefore in no event could it respond to the terms of the claim respecting the adaption of a governor to vary the quantity of the combustible charge and the relative proportions of air, fuel, and water in co-ordination with the variation in quantity of said charge. It would seem odd to construe the claims as covering a true air-throttling valve in conjunction with what, after all, are not valves of any

hale *each ingredient of a combustible* mixture at the same time, the same temperature, under the same pressure, and through the same admission valve and also to atomize and commingle the liquid ingredients with the air supply; a governor adapted to vary the volume of the fuel mixtures, as well as the relative proportions of the constituent ingredients in said mixtures; a combustion chamber in which the air charge absorbs and incorporates the vapors evolved from the atomized liquids commingled with, and held in suspension by said air charge; substantially as, and for the purpose specified."

character for the admission of water and fuel, and then profess to have obtained a structure in which the governor has any control whatever over the latter valves or in which there is in a just sense a "triple unit control"—that is, in a sense showing an advance in the art.

Stating it in another way: To claim a governor, in detailed structural operative relation with three throttling-valves (see Figures 7 and 8) and then claim that one or two of such valves may be eliminated and port holes of determined size substituted therefor (neither of which is in any structural relation to or with the governor), and still claim three valves in combination with a governor adapted to vary relative quantities co-ordinately, seems on its face not only repugnant to the patentee's purpose and ponderous language, but as avoiding his object by recurring to the practice upon which he professed to make an advance. If that thing happens, it is not because of the structure defined in claim 1, but because of the single air throttling-valve in its relation to the governor. In other words, plaintiff's whole contention necessitates an actual elimination or merging of one or more of the elements of his claim in order to comprehend defendant's structure. It aims to either reduce the claim or to stretch the definition of its elements, the result of either being to comprehend old practice and constructions.

It is my judgment that the foregoing considerations dispose of claims 1, 3, and 5, urged on behalf of the plaintiff, and the general conclusion is that no one of them can be interpreted except in accordance with the expressly stated objects and clearly described means found in the language of the patent; that the elements respecting the governor, the three valves, and their operative and functional relationship were given a definition by the patentee indispensable to show his advance over the prior art and upon such definition the defendant structures cannot be included as infringing.

With respect to claim 13, its language seems plainly to indicate that the air, fuel, and water are severally brought to the same temperature or degree of heat before being sucked into the combustion chamber; and that does not mean, on the contrary it negatives, the notion that these several ingredients are to enter the combustion chamber at their respective normal temperatures. The latter thought was urged on behalf of the plaintiff, though the testimony does not support it. Upon this claim the testimony offered on behalf of the defendant is sufficient to support the view that the structure does not and cannot operate in the manner indicated in the claim, and, in any event, that if the result respecting identity of temperatures and pressures and the atomizing and commingling of ingredients is accomplished, it is likewise accomplished, not by the particular element, the piston, of novel construction, but rather upon the considerations and constructions commonly found in internal combustion engines of this general type.

With respect to claim No. 17, it may be said that conceding its object to have particular reference to the starting of an engine, its provision of a fuel reservoir containing a supply of liquid fuel of a more volatile character than the fuel used in ordinary operations is old in the art, as shown by numerous patents. This being so, it is impossible to escape the objection made by defendant against the claim that it is drawn to aggregate unrelated elements and features. This view has not been met by the plaintiff when specifically directed to the element above noted in conjunction with the governor actuated air throttling-valve. The claim is invalid.

These considerations entitle the defendant to a decree dismissing the bill; and it may be accordingly entered."

The opinion is attacked because of the meaning or construction given to the phrase "each ingredient of a combustible mixture." Confessedly this language is uncertain in and of itself. But although doubtful standing alone, it becomes perfectly clear and certain when we examine the entire sentence.

Again, it is hardly necessary to add to the reasons assigned in the opinion. We allude to but one. If we ignored the specifications and the other claims and the generally recognized meaning of a "combustible mixture" in a carburetor, still we could not escape the language of the claim itself, embraced as it is in a single sentence. When patentee as part of the same element spoke of "commingling the liquid ingredients," he referred to the "liquid ingredients" and to the "air." "Liquid ingredients" involves two liquids, water and kerosene. Patentee's use of the plural at this and other places in the claim is significant. We can entertain no doubt that the court was correct in construing "each ingredient of a combustible mixture" to include air, kerosene, and water.

We also agree that the testimony fails to show appellee infringes this claim because its structure is not adapted to inhale such ingredients into the combustion chamber at the same temperature.

Further discussion we consider unnecessary.

The decree is affirmed.