**STUART OXYGEN CO., Limited, v. JOSEPHIAN.**

No. 11445.

Circuit Court of Appeals, Ninth Circuit.

June 18, 1947.

Naylor & Lassagne, and Theodore H. Lassagne, all of San Francisco, Cal., for appellant.

Boyken, Mohler & Beckley, A. W. Boyken, and W. Bruce Beckley, all of San Francisco, Cal. (Reginald L. Vaughan, of San Francisco, Cal., of counsel), for appellee.

Before STEPHENS, HEALY, and BONE, Circuit Judges.

BONE, Circuit Judge.

Appellant, Stuart Oxygen Company (defendant below) and appellee, William Josephian (plaintiff below), are engaged as competitors in the business of producing and supplying oxygen for commercial use. The manufactured oxygen is normally pumped under very high pressure into steel cylindrical tanks so that it may be readily transported to the place of consumption. Because of the high pressures involved these tanks must be very strong and consequently are very heavy, weighing about 140 pounds each.

The increasing use of oxygen, particularly in steel fabrication industries, finally made delivery of single tanks of oxygen economically unfeasible as too much handling was required (due to the small amount of gas contained in a single tank). Other competitors in the business hit upon the solution of delivering the gas in liquid form, but the equipment required was too expensive to be used by either appellee or appellant. They cast about for some way to deliver a number of tanks manifolded together so that less handling would be required. But to fasten many tanks together made the unit so heavy that it could not be conviently handled—particularly so, since, in many instances, the valve fittings had to connect exactly with the consumer's pipe lines. Moreover, other considerations made it imperative that the multiple unit, when constructed, could be handled manually by a single man.

APPELLANT'S DEVICE

APPELLEE'S PATENTED DEVICE

Appellee then invented and patented a device whereby a number of tanks were mounted upon a plate (see the illustration) manifolded together so that the gas from all the tanks could be drawn from a single connection, and the entire unit so balanced upon what appellee calls a "track" that it could be handled manually by a single workman. After the patent had been issued, appellee met a representative of the appellant at a trade convention and described his device to him. This representative displayed great interest in the invention and it is clear from the record that appellant was fully aware of the details of the patented device, and of the fact that it had been patented.

Appellee's original model of the patented device had been constructed under his direction by a mechanic, one Molinari, who later left the employ of appellee under strange circumstances and went to work for appellant. While with appellant he produced for appellant a device similar to that patented by appellee. Appellant produced a large number of these devices and began using them in his business. When appellee learned of this fact he brought this action seeking an injunction against further in-

fringement and an accounting for profits and damages.

The district court held that the patent was valid, that the device of appellant infringed the patent, and granted an injunction against further infringements although finding that an accounting was not necessary. Appellant appeals from this judgment of the district court.

At no point in the proceedings in the district court or in this court was the validity of the patent seriously challenged. The material and decisive question presented and argued before this court is whether appellant's device infringed appellee's patent.

■ Appellee relies upon Ralph N. Brodie Co. v. Hydraulic Press Mfg. Co., 9 Cir., 151 F.2d 91, 95, and urges upon us the rule there expressed that questions of infringement are questions of fact, and therefore in accordance with the Federal Rules of Civil Procedure, Rule 52(a), 28 U.S.C.A. following section 723c, this court will not set aside the determination of the trial court unless it is "clearly erroneous." However, an examination of the Brodie case and the cases therein cited discloses that Judge Mathews made an application in the Brodie case of the correct rule earlier enunciated in Nicholl, Inc. v. Schick Dry Shaver, 9 Cir., 98 F.2d 511, 513, (referred to in the Brodie case) where he set forth the rule and exception in the following terms:

"The question of infringement was in this case, as it usually is a question of fact. Reinharts v. Caterpiller Tractor Co., 9 Cir., 85 F.2d 628, 630. The case does not, as claimed by appellant, fall within *the rule that, where the facts are undisputed, and the case can be determined by a mere comparison of structures, and extrinsic evidence is not needed for purposes of explanation or to resolve questions of the application of descriptions to subject-matter, the question of infringement may be determined as a question of law.* United States v. Esnault-Pelterie, 303 U.S. 26, 30, 58 S.Ct. 412, 82 L.Ed. 625." [Emphasis supplied]

While as Judge Mathews noted, both the Schick Dry Shaver case and the Brodie case fell outside the rule, the case at bar comes clearly within the rule above quoted.

■ The testimony before the trial judge revolved around the exhibits (full size commercial units) and embraced a discussion of the meaning of the term "stability" as used in the claims in the patent, the absence or presence of prior art, and appellee's charge that appellant deliberately copied his device. The terms of the patent and the respective devices of the parties are also before us for our inspection. The facts are clear and undisputed and the question of infringement in this case can be determined by a comparison of structures and is a question of law. Therefore this court will examine for itself the device of appellant and determine as a matter of law whether it infringes the patent of appellee.

The device patented by appellee, as the patent itself stated, was designed to "provide means for clamping a plurality of tanks into a unit which can be readily moved from place to place by tilting and rolling, together with means for reducing the danger of upset" (see the illustration). As the device was described in the patent seven tanks were to be manifolded together, but it is conceded that the number of tanks is immaterial and that the actual units employed commercially by both appellant and appellee contained only four tanks. Likewise it is conceded by all parties that the slight differences in the means used to clamp the tanks together and to secure them to the plate, are immaterial. The heart of the dispute is the nature of the plate, called the "truck" (see illustration) upon which the tanks rest and to which they are secured.

In appellee's patented device the "truck" is a circular flat sheet of steel to which is attached a circular ring called the "track" (approximately the same diameter as the bottom of one tank and made of pipe) which is welded coaxially to the flat plate. The tanks rest upon this "truck" assembly. As is apparent from the drawing, this makes it possible to tip the unit sufficiently to balance it upon this ring or "track" and to roll the entire unit along in a straight line. (It is not rolled along on the outer

edge of the circular plate of the so-called "truck.") On the other hand, in appellant's device, the circular bottom plate to which the tanks are secured, is formed like a soup plate (see illustration) so that the unit may be tipped and rolled along in the same manner as appellee's patented unit.

Appellant has formed the "track" and the "truck" out of the same piece of metal but it does not contend that this fact is important in this case. It concedes that it is immaterial whether the "track" is formed by attaching thereto a metal ring like the "track" on appellee's device, or by forming it, as appellant does, from a single piece of metal that serves as the "truck." Appellant's contention is instead based upon the language employed in the claims of the patent—its theory of the case being that appellant took the patent claims, interpreted them in the light of the specification as securing to appellee certain aspects of his invention, and being thus apprised by the claims, of what was still open to the public, designed his device in such a way as to completely respect appellee's patent rights.

Appellant makes its argument turn upon the language of a single one of the seven claims in the patent. The language of that pertinent claim is as follows:

"2. A truck for handling a plurality of cylindrical tanks comprising a base plate, means for holding a plurality of cylindrical tanks in fixed upright position on the top of said plate, and a basal member fastened to the bottom of said plate and having a circular periphery centrally located with respect to the periphery of said plate to support said truck in upright stable position, said truck having *a second stable position when tilted to rest on both of said peripheries only.*" [Emphasis supplied.]

It contends that the term "second stable position" employed in the claim should be construed in light of the language used elsewhere in the patent, and that if so construed, the term as used means "a second position where the unit will remain at rest." It sup-

ports this argument by pointing out that according to the drawing in the patent the center of gravity of the unit, when tilted, lies directly over some point between the "track" and the outer edge of the plate, so that when the unit is placed upon a smooth level surface and is tilted, it will remain tilted. Appellant goes further by reciting a portion of the specifications of the patent defining the term "second stable position" as follows:

"In any event, the advantageous result of my invention can be accomplished by so designing the lower plate and its attached track, so that.there will be a second stable position, such as that shown in Figure 3 after the tank has been tilted. This simply means that the center of gravity 15 is to lie between vertical lines erected from contacts 17 and 20."

It is argued that when applied in the construction of an actual unit this language means that if the unit is tilted and is being rolled along upon the "track" and is slightly overbalanced and starts to fall, it will come to rest in "the second stable position" (as tilted in the illustration, Figure 3) and will not fall. Appellant contends that this safety factor—this "second stable position"—is, by the language of the claim, the sole subject matter of the patent.

Appellant further contends that its device does not have this "second stable position", that is, "second position where it will remain at rest". Since the "track" is larger in diameter in appellant's device, the center of gravity of the unit never reaches a position outside the circumference of the "track" with the result that its unit will teeter back to the vertical position. If the suggested distinction is real, then appellant has not infringed the patent.

It is a well established rule of law that the rights of the patentee are limited by his claims and if the language of the claims of the patent is clear and distinct, the patentee is bound by the language he has employed.[1] Moreover, it is well recog-

---

[1] Universal Oil Products Co. v. Globe Oil & Refining Co., 322 U.S. 471, 485, 64 S.Ct. 1110, 88 L.Ed. 1399; McClain v. Ortmayer, 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800; Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122; Wilson & Willard Mfg. Co. v. Union Tool Co., 9 Cir., 249 F. 729, 734; American Roll Gold Leaf v. W. H. Coe Mfg. Co., 1 Cir., 212 F. 720; Fulton Co. v. Powers, 2 Cir., 263 F. 578; Walker on Patents,

nized that an uncommon word used in the claims is to be construed in the light of its usage in the description or other portion of the patent rather than to limit it to its dictionary meaning.[2] But nonetheless there are several weaknesses in appellant's argument.

█ In actuality, if the floor is not level or if it be uneven, appellee's device may not remain tilted but may teeter back to the vertical position. On such a floor appellant's device may remain tilted and does not always teeter back to a vertical position. But with either device and on any floor it is difficult to overturn the unit. The physical and operating characteristics of the two devices are so similar that under actual and normal working conditions it would be practically impossible to distinguish between them so far as their utility is concerned. These facts are apparent from even a casual inspection of the devices, and they satisfy us that the distinction made by appellant is without substance.[3]

The term "stability" would imply not that the unit had come to a point of rest but that it had reached a point where it would require additional force to topple the unit over. Stability is a relative term and does not connote a position which is fixed and unchangeable, but merely means a tendency to remain in a given position—in this case, to remain upright.

Futhermore, the language of the patent does not disclose any intent to be bound by the drawing. The specification[4] emphasized that the application illustrated in the drawings was only *"one preferred form,"* when it said:

"I wish it to be distinctly understood that the drawing given herewith is illustrative only, and that the relative diameters of track 11 and lower plate 8 may be varied as desired to control the amount of force necessary."

It is apparent from the drawings and particularly from the actual devices before the court that the only difference relied upon by appellant is the difference in the "relative diameters of the track and lower plate."

As the Supreme Court said in Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 418, 28 S.Ct. 748, 751, 52 L.Ed. 1122:

"An inventor must describe what he conceives to be the best mode, but he is not confined to that. If this were not so most patents would be of little worth. 'The principle of the invention is a unit, and invariable; the modes of its embodiment in the concrete invention may be numerous and in appearance very different from each other.' 2 Robinson, Patents § 485."

Construing the claim in light of this rule and this specification, it is impossible to attach the narrow meaning, contended for by appellant, to the phrase "second stable position." Judge Bratton of the Tenth Circuit in Chicago Pneumatic Tool Co. v. Hughes Tool Co., 97 F.2d 945, 946, offered an illuminating comment on this sort of a problem when he said:

"Neither is it necessary that every embodiment be illustrated by the drawings unless the form of the device is the principle of the invention. Where the particular form is not an embodiment of the principle of the asserted invention, the patent is not restricted to the exact form of the construction shown in the diagrammatical drawing. And *a device infringes if it embodies the essential principles taught by the patent,* even though there is a departure from the drawings to the extent of simple changes which would be readily conceived and made by a mechanic in the course of constructing a device on the patent. (Cases cited.)" [Emphasis supplied].

█ As we construe appellee's patent, his invention is a device to enable one man

---

(Deller's Ed.) § 256; 48 Corp.Jur. p. 221, notes 37 and 38, Patents § 349.

[2] Advance Rumley Co. v. John Lauson Mfg. Co., 7 Cir., 275 F. 249; Esnault-Pelterie v. Chance Vought Corporation, D.C., 56 F.2d 393, affirmed, 2 Cir., 66 F.2d 474; Walker on Patents, (Deller's Ed.) § 271.

[3] Actual commercial units and working models were inspected and handled by this court.

[4] "The claim is to be read in connection with the specifications." Schnitzer v. California Corrugated Culvert Co., 9 Cir., 140 F.2d 275, 276.

862

to handle manually, by rolling along on the "track", a large number of cylindrical tanks of great weight, with comparative safety from overturning. There is no impressive virtue and could be none in the fact that the unit, when tilted, would remain tilted. The only virtue could be in the safety factor—that is, in the safety against overturning. Viewed in that light, stability can only mean, and we so hold, that at the point where the outer edge of the "truck" touches the floor, additional force is required to overturn the unit. If stability is so defined, then appellant's device has a "second stable position" exactly similar to that described in the patent. The units are substantially identical in construction, and perform their function in substantially the same way.

We conclude as a matter of law that appellant's device infringes the patent. The judgment of the district court is affirmed.