COURSON v. WESTINGHOUSE AIR BRAKE CO.

(Circuit Court of Appeals, Third Circuit. February 23, 1920.)

No. 2505.

1. PATENTS ⬤328—FOR FRICTION DRAFT GEAR NOT INFRINGED.
    The Courson patent, No. 732,521, for friction draft gear for railroad cars, held not infringed.
2. PATENTS ⬤328—FOR FRICTION DRAFT GEAR INFRINGED.
    The Courson patent, No. 1,180,979, for friction draft gear for railroad cars, held infringed.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Suit in equity by John F. Courson against the Westinghouse Air Brake Company. Decree for defendant, and complainant appeals. Affirmed in part, and reversed in part.

Charles M. Clarke, of Pittsburgh, Pa., for appellant.

Kerr, Page, Cooper & Hayward, of New York City (Thomas B. Kerr and Edward A. Wright, both of New York City, and James K. Bakewell, of Pittsburgh, Pa., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

WOOLLEY, Circuit Judge. This is a suit for infringement of Letters Patent No. 732,521 and No. 1,180,979, issued June 30, 1903, and April 25, 1916, to J. F. Courson, and is here on the plaintiff's appeal from a decree of the District Court dismissing the bill on the ground of non-infringement. The claims in issue are 8, 9, 10, 11, 13, 14, and 16 of the earlier patent and 1, 3, 4 and 5 of the later patent.

The inventions of the patents relate to friction draft gearing connected with the draw-bars of railroad cars and particularly to means for taking up or absorbing the initial shock and strain incident to coupling, starting and stopping cars in their train movement. The alleged infringing device relates to the same subject and is based on Letters Patent No. 989,949 to Cotton and Henderson and Nos. 391,997 and 543,915 to Westinghouse.

The art of friction draft gearing deals with factors of safety, economy and comfort in the movement of both freight and passenger trains in our great systems of rail transportation. It has become, in consequence, a very broad art, which—particularly since the invention of the air brake—has attracted capital in ample measure and has invited the attention of inventors of the first order. The problem of providing means to ease or absorb the shock and strain incident to the sudden starting and stopping of a railroad train of several thousand tons in momentum was normally a large one when considered with reference to the limited room available in the under-frame of a car for mechanism of requisite size and strength. But this problem was magnified and made vastly more difficult of solution by a requirement of the Association of Master Car Builders that any movement between the draw-bar and the car shall be limited to less than four inches. The principle which all inventors have applied to this problem of controlling a great force within a relatively minute space is that of gradual retardation. In the search for means by which to apply this principle, resort was, very naturally, first made to the use of steel springs. But it was soon found that a spring strong enough and heavy enough to take up the crushing impact upon a draw-bar was too large and too heavy for the limited space it was required to occupy. Resort was then made to friction devices, springs being eliminated except as they were used in smaller dimension to supplement the action of friction and assist in effecting release of friction members after engagement. Friction draft gearings consisted of multiple friction plates or members capable of being gradually and increasingly compressed against each other until within the limited draw-bar travel of three and one-half inches the shock or strain of the car movement was taken up and absorbed. These members were differently arranged one with relation to the other, sometimes parallel and sometimes at an angle, with the object always of making and increasing friction. Friction was further attained by various means for exerting lateral pressure on friction members, such as wedges, wedge blocks, and buffing blocks. The natural sticking of wedges and wedge blocks thus compressed and expanded under these forces was overcome by the use of springs within the gear, intended, after the movement ended, to force the wedge or wedge blocks back to their normal positions

and release the friction members from contact, leaving them ready to coact and arrest the travel of the draw-bar and take up shock and strain when again called on.

The defendant company had developed to a high mechanical and commercial success a type of friction draft gear under inventions of the great inventor whose name it bears and under other inventions which it had acquired. This gear was known as "D type" and had been sold to the railroads of the country to the number of 900,000. After Courson had patented his invention, the defendant brought out a new gear known as the "N type," which included among its several elements, as the plaintiff alleges, the inventions of his patents. It is, therefore, in the "N type" of the defendant's gears that infringement is charged.

Both Courson patents in suit concern improvements in particular parts of friction draft gears, the main difference between them being that the earlier patent concerns the positioning and fastening of friction plates while the later patent involves mechanism for expanding and contracting the plates in effecting and withdrawing friction. While both are directly related to the subject matter of friction draft gears, neither is related directly to the other. Therefore, we shall consider them separately.

## Courson Patent No. 732,521.

[1] Friction draft gears, designed to take up, within a movement of about three and one-half inches, the strain of draw-bars in the pulling and buffing of a train of cars, constituted as we have said, a highly developed art when Courson entered it. In their mechanism, draft gears included wedges, wedge blocks, buffing blocks, friction members, springs,—all old in various combinations. The invention of the patent consists in a rearrangement of these old elements in a new combination, the patentability of which is not seriously contested. The issue, being directed mainly to the scope of the patent, is one of infringement.

While the invention of the patent embraces in its construction all parts of a friction draft gear, the part of the draft gear to which it particularly relates is that of friction plates, and the problem to which the invention is addressed is the positioning and fastening of these plates with a regard to the movement of one against the other in bringing about the desired friction. Properly to appraise the invention and decide the issue of infringement, it becomes necessary first to construe the claims in suit. After that, it will not be necessary to review the art. It will only be necessary to compare the alleged infringing mechanism with the invention of the patent as construed, and from this comparison determine whether the former is within the scope of the latter.

The claims in issue are of two kinds, broad and narrow. Of the narrow claims, the following is typical:

"11. In combination with a draft-bar, a friction member recessed on its edge and means in said recess connected with the car-frame for holding the said member removably in place and a co-acting friction member, substantially as described."

This claim is narrow in that it specifically designates the place, namely, the car frame, in which the stationary friction member is fixed. The broad claims lack this specification of place, and on showing a combination of a draft-bar and a friction member movable therewith, provide, by different expressions, for "a relatively fixed friction member in contact with the movable member," "an abutment for holding the relatively fixed member against movement in either direction by engaging shoulders thereon," and "a friction element capable of forward and backward movement" with "secondary friction elements in fixed positions   *   *   *   substantially as described."

The description in the specifications to which the broad claims refer discloses nothing beyond what is specified in the narrow claims, namely, the stationary friction member fixed or recessed in the car frame. As neither the broad claims nor the specifications to which they refer disclose anything beyond what is disclosed by the narrow claims, we regard all claims in suit as of equal breadth and hold that all are restricted to the disclosure of fixing or fastening the immovable or "relatively fixed friction member" to the car frame.

The patent provides one set of plates—one frictional element—fixed to or recessed in the car frame so as to prevent longitudinal movement in either direction on pulling or buffing and so as to require the co-operating set of plates—the other frictional element—to move in both directions against the first, one in buffing and one in pulling. The fastening of this one set of friction plates to the car frame and its fixation against longitudinal movement by the provided means of projecting shoulders or lugs, thereby making it a stationary frictional element against which the other set of friction plates moves in one direction or the other and by contact raises the friction necessary to take up shocks and strains, is the essence of the invention.

The defendant's device has one set of plates—one frictional element—immovably fastened not to the car frame but to a cage which moves within the car frame. This set of plates is "fixed" in the sense of being fastened to the cage, but the cage itself moves in buffing or pulling. The result, in the defendant's device, is, that in pulling, one set of plates or frictional element is stationary and the other is movable, while in buffing, the reverse occurs, and the first set of plates is movable and the other is stationary. As the task imposed upon the draw gear involves the taking up of strains in both pulling and buffing, the plates so fixed in the cage move with the cage as it moves longitudinally to perform one of these tasks, while in the patent the like plates, connected with the car frame, remain stationary against longitudinal movement in either pulling or buffing action. Fixation of one set of plates in the car frame is therefore the invention. The invention is limited by its terms and disclosure to fixation of this character. The frictional element of the patent fixed against movement by attachment to the car frame cannot, on the restricted disclosure, be expanded to embrace a like frictional element fixed against movement with relation to another frictional element, wheresoever or howsoever mounted. Such a broad interpretation, as asked for by the patentee, would so enlarge the invention as to make it embrace broadly

the conception of fixity of one frictional element, without regard to where or how that element is fixed, and would permit the invention to be carried into any draft gear organism which includes friction plates. This would be wrong because the disclosure of the patent is restricted to one frictional element fixed or fastened in one designated place, namely, in the car under-frame. It does not extend to one frictional element fixed and made stationary with relation to a movable frictional element, wheresoever placed.

We are of opinion, that, if invention exists, it is so limited by the patent as not to cover the defendant's device.

## Courson Patent No. 1,180,979.

[2] Of the claims of this patent, which are in suit, the following is typical:

"1. In a friction draft gear, the combination with the casing and the relatively movable draw-bar; of friction blocks engaging the casing, a buffing block engaging the draw-bar, and differential angle wedge blocks interposed between the friction blocks and the buffing block, substantialy as set forth."

The inventive characteristics of this combination, as disclosed more specifically by the remaining claims, are—friction blocks having inner inclined faces and a buffing block having outer inclined faces of different angles, with interposed wedge blocks having outer faces of steeper inclination engaging the inner faces of the friction blocks and inner faces disposed at an obtuse angle to the longitudinal center of the buffing block, engaging corresponding faces thereof.

The claims are for combinations having four elements: (1) Casing, (2) friction blocks engaging the casing, (3) buffing block, and (4) differential angle wedge blocks interposed between the friction blocks and buffing block.

The prior art contained the first three elements in combination. Whether it contained the fourth, actually or approximately, is in dispute.

The defendant distinguishes its device from the invention of the patent by claiming that it contains only the three elements of the prior art. If this were the only distinction, the question of infringement would be easy of solution, because it appears on a mere count that in the defendant's device there is in combination a smaller number of elements than in the combination of the invention. In this contention of the defendant, there is, we think, some confusion as to just what are friction blocks, and whether friction blocks purely as such should be distinguished from the casing purely as a casing, where in the patent friction blocks are described as "engaging the casing" and are treated in the argument as a part thereof. There was also some confusion in distinguishing a friction block from a wedge or from a block with a wedge function; all of which necessitates a brief excursion into the art and an examination of the contesting devices.

In the prior art, there were, as we have said, the three elements of (1) casing, (2) friction blocks in engagement with the casing, and (3) a buffing block. The buffing block was originally in the shape of an ordinary wedge. On pressure, it transmitted shocks and strains to

the friction blocks, thence to the casing, whereby the shocks and strains were spread and absorbed through the resultant friction. Buffing blocks varied in shape to conform to the ideas of different inventors. All conceptions of buffing blocks of the prior art were that of a single wedge of some size and shape, until Courson came along. He took the casing of the prior art with its interfitting friction members and also the buffing block or wedge of the prior art—all concededly old. The thing he did was to split or break up the old buffing block or wedge and divide it into two parts; one part—a central wedge; the other part—smaller wedges (termed "differential angle wedge blocks") positioned on the outer sides of the central wedge, making their angles of contact one with the other obtuse, and the angle of contact between the friction blocks and differential angle wedge blocks acute. He thus achieved two things by the *same* multiplication and angular arrangement of parts; first, on buffing or pulling, greater expansion, and, in consequence, greatly increased friction; second, when buffing or pulling ends, the collapse of the parts, and, in consequence, the prevention of sticking. In other words, Courson took the wedge of the prior art, split it, and made a wedge within a wedge, giving them broad or obtuse angles which by their high expansive force increased friction on the pull and buff, and, because of the very same obtuseness, facilitate the release of the parts when the pull or buff ends. While the art contained friction members in considerable variety positioned in different ways and at different angles with reference to the buffing block (Patent No. 754,676 to Moore) and contained also buffing blocks, which, by expansion, compressed the friction members and increased friction (Patent No. 391,997 to Westinghouse, No. 989,949 to Cotton and Henderson), we have been shown nothing in the art which suggests the cam-like expansive action which Courson got from his wedge within a wedge and nothing which developed in one mechanism the dual characteristics of great expansion and ready contraction.

It is true that the defendant's device, when regarded numerically, consists of no more than the three elements of the prior art. But the defendant, like the patentee, took the ordinary wedge-shaped buffing block of the art and broke it into two parts, an outer part and an inner part. The outer part (consisting of two members) appears on first view to be so shaped as to perform only the function of friction blocks, and the inner part (consisting of one member) is made into a central wedge buffing block. If the defendant had stopped here, it could not have been convicted of infringement. But it went further, and in shaping the new parts gave the seeming friction blocks narrow angles on their outer edges and broad angles on their inner edges and also gave to the buffing block on its outer edge broad angles—all within Courson's conception of parts and angles—thereby developing the precise function and producing the exact results of Courson's invention. If it be argued that in Courson's invention there are four elements while in the defendant's device there are but three,—if named and numbered by the elements of the prior art,—then it is clear that the defendant has taken one of these three elements, namely, the wedge

or buffing block of the art, and has so broken it and shaped its lines as to embody the defendant's two elements of central buffing block and differential angle wedge blocks.

As we examine the two devices, it appears that in avoiding the precise number of elements in the invention, the defendant has combined in one element of its device two elements of the invention. True, in the defendant's device there are no separate differential angle wedge blocks, but these blocks are there nevertheless, not as separate blocks, but as parts of other blocks, where, though inseparable, they hold the place, have the shape, and perform the function of the separate differential angle wedge blocks of the invention.

While the novelty of the invention of the patent resides in its split-wedge spreading action, effecting increased friction and speedy release of the gear parts, the merit of the invention is not limited to the advantage of these dual characteristics. It extends to the mechanical and commercial consideration, that, in meeting the constantly increasing strains of modern traffic, which now range from 100,000 pounds to 250,000 pounds resistance, the defendant has by the use of the invention raised the rated capacity of its old "D type" gear from a maximum of 200,000 pounds to a rated maximum capacity of 250,000 pounds in its new "N type" gear.

We are of opinion that the buffing block mechanism of the defendant's device is within the range of equivalents to which the invention of the patent, measured by the advance which it has made in the art, is entitled, and that, in consequence, it infringes the patent. Paper Bag Case, 210 U. S. 405, 415, 28 Sup. Ct. 748, 52 L. Ed. 1122.

The part of the decree below which held not infringed the claims of Letters Patent No. 732,521 in suit is affirmed, and the part which held the claims of Letters Patent No. 1,180,979 in suit not infringed is reversed, with costs of appeal, including cost of procuring and printing the record, to be borne equally by the appellant and appellee.