## BLESSING v. CONSOLIDATED TRIMMING CORPORATION.

District Court, S. D. New York.
Jan. 23, 1939.

Sawyer, Kennedy, Humason & Hazell, of New York City (Horace Dawson, of Chicago, Ill., and James J. Kennedy, of New York City, of counsel), for plaintiff.

Marshall & Hawley, of New York City (E. W. Marshall, of New York City, of counsel), for defendant.

WOOLSEY, District Judge.

My judgment in this cause is—

1. That Claims Nos. 3, 4, 7, 8, 9 and 10, of which the validity was not questioned, were infringed by the defendant.

2. That Claims Nos. 15, 16, 17 and 18 are not, in my opinion, valid.

3. That, accordingly, there should be an interlocutory judgment for the plaintiff providing for the usual injunction, carrying costs and referring the cause to a master to report to this Court on the damages suffered by the plaintiff, and the profits made by the defendant from the date hereinafter named by reason of the infringement found.

4. The costs allowed to the plaintiff will include all taxable disbursements and allowances.

I. My subject matter jurisdiction is based on the Patent Law, Title 28, United States Code, § 41(7), 28 U.S.C.A. § 41(7).

There is not any question of venue.

II. The Walliser patent, No. 1,660,-536, was assigned to the Western Dyeing & Processing Company on the 25th day of March, 1935. It did not give to the assignee the right to sue for any past infringement. Consequently, when this suit was begun by the Western Dyeing & Processing Company, as assignee of the patent in question on August 27, 1935, there was not any right of action for infringement prior to March 25, 1935, vested in the then plaintiff.

The situation in this regard remains unchanged.

Whilst this suit was pending, and on July 6, 1936, an assignment of the said patent was made to the present plaintiff, L. G. Blessing. This assignment gave to Mr. Blessing the right to recover for any past infringements; but, by reason of the form of the earlier assignment referred to, such right could not, of course, go further back than March 25, 1935, which vested the patent on the terms above described in the Western Dyeing & Processing Company, the plaintiff's assignor.

Mr. Blessing was, thereafter, duly substituted as the plaintiff in this cause in place and stead of the Western Dyeing & Processing Company.

On December 9, 1938, during the trial, a supplemental bill of complaint was filed at my suggestion, in order fully to set forth the mesne assignments by which Mr. Blessing secured his locus standi herein.

Thus the period during which Mr. Blessing, the present plaintiff, could claim any infringement was fixed as between March 25, 1935, the date of the assignment to his assignor, and August 27, 1935, the date when this suit was commenced by issuance of subpoena to the marshal. Cf. Securities & Exchange Commission v. Torr, D.C., 22 F.Supp. 602, 609.

III. In view of the decision of the United States Supreme Court on April 25, 1938, in Interstate Circuit, Inc. v. United States, 304 U.S. 55, 56, 57, 58 S.Ct. 768, 82 L.Ed. 1146, it is now a work of supererogation to write a considered opinion on the facts in an equity cause, for its place will be taken by formal findings of fact and conclusions of law, separately stated, under Rules of Civil Procedure, Rule 52(a), 28 U.S.C.A. following section 723c, formerly Equity Rule 70½, 28 U.S. C.A., following section 723.

IV. The patent here in question, No. 1,660,536, was granted on February 28, 1928 to Robert E. Walliser, of Chicago, Illinois, for a "Machine for Making and

Applying Tufts, etc." on an application filed September 27, 1926.

The objective of the patent is thus stated at the commencement thereof: "My invention relates to improvements in machines for making and applying tufts and the like, and has for its object the provision of an improved machine of this character by means of which tufts, tassels and other ornamentation may be automatically and rapidly applied to looped headings and the like, the present exemplification of my invention being in the form of attachment or addition to the machine disclosed in the patent to C. F. Arnold, No. 1,390,-267, dated September 13, 1921."

The Arnold patent referred to was for a machine, which need not be described, to make balls of wicking to be attached to the loops of a woven heading to be used as a decorative border or edging for curtains, etc., and was held by Judge Patterson to be invalid by reason of prior public use by the patentee. E. L. Mansure Co. v. Consolidated Trimming Corporation et al., D.C., 16 F.Supp. 608, 609, affirmed, 2 Cir., 90 F.2d 1006.

Before the Walliser patent, the feeding of each loop of the heading to the dies of the Arnold machine,—the lower one of which had what was called a horn to hold the loop—had to be done by hand. This necessarily was often an uncertain and always a slow process, and involved great risk of injury to the operator's fingers.

Further, more fully to attain the objective of Walliser's patent, it was necessary that the loops of the heading should be mechanically maintained in sequence, and the claims thereof, Nos. 15, 16, 17 and 18, herein pressed by the plaintiff, concerned themselves with the process of putting the loops on the feeder mechanism which is described and claimed in the earlier claims on which the plaintiff relies, namely, Nos. 3, 4, 7, 8, 9 and 10.

The whole idea of the patent, as I see it, is that the loops shall go in sequence from the loom to the dies of the Arnold machine, and the whole series of mechanisms, which it is not necessary here to describe in detail, in use both by the plaintiff and the defendant, are aimed to achieve this end.

For it is obvious that after the loops are woven on to the heading it is necessary that there should be some way in which they should be kept in their proper sequence, one after the other. The way this is achieved is to have the loops, when they have been woven, assembled on a piece of wire, as is shown in Walliser's claims, Nos. 15, 16, 17 and 18, or, on a piece of string, as is shown in defendant's commercial practice which was illustrated at the trial, and is also shown in United States Patent No. 2,058,994, granted to Hugo A. Klahre, of Teaneck, New Jersey, on October 27, 1936, and now owned by the defendant.

Now, after the feeder is loaded, it is, of course, highly important to make certain that, when each of the loops on the heading is fed in turn to the dies of the Arnold machine, it should be held open. Unless special arrangement is made to hold them open the collapse of the loops of thread woven on the heading is certain, and the tendency of the loops so woven to curl up is almost impossible to avoid owing to the stresses which naturally remain in a fabric after weaving of any kind.

With this explanation as a prelude, I shall now quote the claims relied on by the plaintiff herein in what I regard as their logical order in the manufacturing process, which I have attempted briefly to describe.

V. This suit is founded on two categories of claims.

The first set of claims, Nos. 3, 4, 7, 8, 9 and 10, deals with the question of the feeder mechanism as attached to what is known as the Arnold machine.

The second set of claims, Nos. 15, 16, 17 and 18, deals with the question of assembling or lining up of the loops and the loading therewith of the feeder mechanism.

A. The second set of claims herein relied on, namely, Nos. 15, 16, 17 and 18, which, it seems to me, logically precedes the other set of claims herein relied on, reads as follows:

"15. The combination with a weaving machine wire, of a movable guide for receiving loops; and means for directing loops from said wire onto said guide, substantially as described.

"16. The combination with a weaving machine wire of a movable tubular guide for receiving loops; and means for directing loops from said wire onto said guide, substantially as described.

"17. The combination with a weaving machine wire, of a movable guide for receiving loops; and a juncture member forming a smooth continuation of both said wire and guide for directing loops from said wire onto said guide, substantially as described.

"18. The combination with a weaving machine wire, of a movable tubular guide for receiving loops; and a juncture member forming a smooth continuation of both said wire and guide for directing loops from said wire onto said guide, substantially as described."

From this assembly wire—which I called at the trial by way of metaphor a "track" or "bridge"—they are passed, in the plaintiff's method, by hand, and, in the defendant's method, by machinery, on to the mechanism, which feeds them to the Arnold machine.

B. The patent for this feeder is based herein on the following claims:

"3. The combination with a machine for applying ornamentation to the loops of a looped heading, of a tubular guide member for said loops arranged in operative relation to said machine; and a reciprocating feed member mounted within said guide, the discharge end of said guide being notched to expose partially the end of said feed member and said end of said feed member being transversely notched to engage said loops, substantially as described.

"4. The combination with a machine for applying ornamentation to the loops of a looped heading, of a tubular guide member for said loops arranged in operative relation to said machine; and a reciprocating feed member mounted within said guide, the discharge end of said guide being notched to expose partially the end of said feeder member and said end of said feed member being transversely notched to engage said loops and longitudinally notched to accommodate parts of said machine, substantially as described.

"7. The combination with a machine for applying ornamentation to the loops of a looped heading, including a reciprocating forked die and a cooperating reciprocating plunger die, of a tubular guide member for said loops arranged in operative relation to said dies; and a reciprocating feed member mounted within said guide, the discharge end of said guide being notched to expose partially the end of said feed member and said end of said member being transversely notched to engage said loops, substantially as described.

"8. The combination with a machine for applying ornamentation to the loops of a looped heading, including a reciprocating forked die and a cooperating reciprocating plunger die, of a tubular guide member for said loops arranged in operative relation to said dies, and a reciprocating feed member mounted within said guide, the discharge end of said guide being notched to expose partially the end of said feed member and said end of said feed member being transversely notched to engage said loops and longitudinally notched to accommodate said forked die, substantially as described.

"9. The combination with a machine for applying ornamentation to the loops of a looped heading, including a reciprocating forked die and a cooperating reciprocating plunger die, of a guide tube for said loops; a detachable clamping member adapted and arranged to engage the outer end of said tube, said tube projecting thence into operative relation with said dies; grooved guide rollers loosely supporting the inner end of said tube to permit the free passage of said loops; and a reciprocating feed member mounted within said guide tube, the discharge end of said guide tube being notched to expose partially the end of said feed member and said end of said feed member being transversely notched to engage said loops, substantially as described.

"10. The combination with a machine for applying ornamentation to the loops of a looped heading, including a reciprocating forked die and a cooperating reciprocating plunger die, of a guide tube for said loops; a detachable clamping member adapted and arranged to engage the outer end of said tube, said tube projecting thence into operative relation with said dies; grooved guide rollers loosely supporting the inner end of said tube to permit the free passage of said loops; and a reciprocating feed member mounted within said guide tube, the discharge end of said guide tube being notched to expose partially the end of said feed member and said end of said feed member being transversely notched to engage said loops and longitudinally notched to accommodate said forked die, substantially as described."

VI. The defendant does not challenge the validity of claims, Nos. 3, 4, 7, 8, 9

and 10, but does challenge the question of its infringement thereof.

■ It would, indeed, be "sticking in the bark" to hold that the omission of one element in a combination patent avoided infringement, if the alleged infringer used a mechanical equivalent and achieved the same result in substantially the same way. The law, as I understand it, is otherwise.

To avoid infringement the omission must be of an element plus its function for then true equivalence may not properly be asserted.

Inasmuch as patent causes involve principally questions of fact, and the ingenuity of inventors is almost unlimited, the citations of authorities in a patent cause has always seemed to me to be largely a vain thing, for such authorities serve principally to give instances of metes and bounds—often obscure—to settled principles. But occasionally the parallelism between the facts in the cause being tried and one of the authorities cited is so striking as to be of real assistance.

Perhaps the most apposite authority on its facts for this cause is Courson v. Westinghouse Air Brake Company, 3 Cir., 263 F. 89, wherein Judge Woolley said at page 95: "As we examine the two devices, it appears that in avoiding the precise number of elements in the invention, the defendant has combined in one element of its device two elements of the invention. True, in the defendant's device there are no separate differential angle wedge blocks, but these blocks are there nevertheless, not as separate blocks, but as parts of other blocks, where, though inseparable, they hold the place, have the shape, and perform the function of the separate differential angle wedge blocks of the invention."

■ So, here, although the plaintiff's "tubular guide" within which operates the feed member placing the loops on the horned die of the Arnold machine, is not used by the defendant, nevertheless the defendant—as is shown by the Klahre patent, No. 2,104,398, owned by it, and as was illustrated at the trial—accomplishes the same result by substantially the same means due to the fact that it reciprocates its most ingenious feed rod inside the loops of the heading, successively picks up each loop by its feed rod, supports each loop and also spreads it by the springing quality of the extension thereof, and then transfers each loop in its proper turn to

the horn of the die of the Arnold machine as does the feed member of the plaintiff.

The ends of the two feed rods are illustrated in the two figures annexed hereto, and incorporated by this reference herein.

FIG. 1.

DEFENDANT'S FEED WITHOUT REDUCED EXTENSION

WALLISER FEED ROD WITHOUT TUBE CUTAWAY EXTENSION

FIG. 2.

DEFENDANT'S FEED WITH REDUCED EXTENSION

TRANSVERSE NOTCHES

TRANSVERSE NOTCHES

WALLISER FEED ROD WITH TUBE CUTAWAY EXTENSION

■ In Westinghouse v. Boyden Power-Brake Company, 170 U.S. 537, at page 568, 18 S.Ct. 707, at page 723, 42 L.Ed. 1136, Mr. Justice Brown made the following comment on the subject of infringement which, it seems to me, is very apt here: "We have no desire to qualify the repeated expressions of this court to the effect that, where the invention is functional, and the defendant's device differs from that of the patentee only in form, or in a rearrangement of the same elements of a combination, he would be adjudged an infringer, even if, in certain particulars, his device be an improvement upon that of the patentee. But, after all, even if the patent for a machine be a pioneer, the alleged infringer must have done something more than reach the same result. He must have reached it by substantially the same or similar means, or the rule that the function of a machine cannot be patented is of no practical value. To say that the patentee of a pioneer invention for a new mechanism is entitled to every mechanical device which produces the same result is to hold, in other language, that he is entitled to patent his function. Mere variations of form may be disregarded, but the substance of the invention must be there."

It seems to me that the substance of the Walliser invention is found in the

defendant's feed rod, although in an improved and simplified form.

■ VII. As to the claims, Nos. 15, 16, 17 and 18, embodying the idea of threading the loops in sequence when they come from the loom as shown in the following sketch—

*Fig.12* 160      Comes from loom   84 161   83

and thus preserving them in convenient shape to be put on to the feeder, it is quite clear to me that, as drawn, they do not disclose an invention,

Whether or not, if properly drawn, they could be made to show a patentable idea involving invention over the prior art, I do not have to decide, but I think that it is rather doubtful. See, for example, the British Patent, No. 28,006, of December 8, 1906, to M. Kehrmann; the United States Patent, No. 661,365, of November 6, 1900, to Thomas F. Byrne; and the United States Patent, No. 699,153, of May 6, 1902, to Timothy A. Curtis.

Indeed, it might be remarked that the idea of using a wire or string to maintain a sequence between objects goes back as far in the history of human arts as the wearing of beads.

It seems to me, therefore, that Claims, Nos. 15, 16, 17 and 18 are invalid, and, accordingly, it is unnecessary for me to discuss the interesting question of whether defendant's string method of maintaining the sequence of the loops when they come from the looms infringes those claims.

VIII. Counsel for the plaintiff must, therefore, submit to me through the Clerk's office findings of fact and conclusions of law in accordance with this opinion and in pursuance of Rule 52(a), 28 U. S.C.A. following section 723c, and give five days' notice thereof to counsel for the defendant.

Counsel for the defendant may, on the return day of such notice, submit criticisms of the findings of fact proposed by the plaintiff's counsel, if he be so advised.

All proposed findings, submitted by either party, must be typed in triple spacing so that I may conveniently correct them if I wish to do so.

Only the findings of fact and conclusions of law which I sign will be filed as part of the record herein.

After the findings of fact and conclusions of law are signed by me, an interlocutory decree carrying costs may be submitted to me through the Clerk's office giving the plaintiff the usual injunction and providing for a reference to a master as above indicated.