CRAMPTON MFG. CO. v. DURABLE
PRODUCTS CO.

No. 1216.

United States District Court
W. D. Michigan, S. D.

Oct. 25, 1949.

Wm. Cyrus Rice, Grand Rapids, Michigan, Frank Parker Davis, Chicago, Illinois, for plaintiff.

Otis A. Earl, Kalamazoo, Michigan, Butterfield, Amberg, Law & Buchen and Philip W. Buchen, Grand Rapids, Michigan, for defendant.

STARR, District Judge.

This is a patent-infringement case involving letters patent No. 2,233,159 issued February 25, 1941, to Basil R. Crampton for a "handle and operating lever assembly for flushing tanks."

At the outset attention is called to prior litigation in which Crampton, while still the owner of the patent, began suit in this court for infringement against the Crampton Manufacturing Company, the plaintiff in the present suit. The late Judge Fred M. Raymond held that claims 2, 11, 12, and 13 of the Crampton patent were valid and were infringed by the Crampton Manufacturing Company. On appeal the Court of Appeals for the Sixth Circuit affirmed as to the validity of claims 11, 12, and 13, but reversed as to claim 2 and as to the finding of infringement. Crampton Mfg. Co. v. Crampton, 6 Cir., 153 F.2d 543, which we will refer to as the former suit.

Following that litigation the Crampton Manufacturing Company acquired title to the Crampton patent and filed complaint against defendant, alleging infringement of said patent and asking for a permanent injunction against further infringement, an accounting for profits and damages, costs of suit, and attorneys' fees. Defendant answered, denying infringement and alleging invalidity of the patent claims.[1] At the opening of the trial plaintiff limited its charge of infringement to claims 1, 11, 12, and 13 of the patent in suit, which are set forth in a footnote below.[2]

1. It appears from the pleadings that by written notice plaintiff had also charged defendant with infringing Pleasant & Keller patents Nos. 2,295,686 and 2,313,-840, but had withdrawn such charge, and therefore the present suit involves only the validity of the Crampton patent and the question of its infringement.

2. "1. A handle assembly for the flush valve actuating lever of a flushing tank comprising a hollow mounting fixture extending through said flushing tank, and means for securing the fixture in fixed relation to the tank including a non-circular element on the fixture engageable in a similarly shaped recess in the tank and a nut threaded on the fixture to clamp the same to the tank, said fixture having a plurality of laterally extending lugs integral therewith on the exterior of the tank, a handle rotatable on said fixture and receiving the actuating lever in non-rotative relation thereto, said actuating lever extending through said hollow fixture, means on the handle engageable between a pair of lugs to limit the angular movement of the handle on the fixture, and means for preventing axial separation of the handle, fixture and lever."

"11. In combination with a flushing tank actuating lever, a base adapted to be fixedly secured to a flushing tank wall to extend therethrough and having a clamping nut threadedly receivable thereon interiorly of the wall to secure the base to the wall, said base rotatably receiving and limiting the degree of rotation of said lever, and a handle mounted on said base exteriorly of the wall for oscillatory movement with reference to the base, said handle being permanently secured to said lever whereby oscillatory movement of the handle imparts similar movement to the lever, said lever having means thereon to prevent separation of the lever and base, whereby said handle, base and lever may be mounted as a unit on said wall and secured thereon by said nut, said nut being removably engageable with said base by freely telescoping movement over said lever."

"12. In combination with a flushing tank actuating lever, a base adapted to be fixedly secured to a flushing tank wall to extend therethrough and having clamping means engageable therewith interiorly of the wall to secure the base to the wall, said base rotatably receiving and limiting the degree of rotation of said lever, a handle mounted on said base exteriorly of the wall for oscillatory movement with reference to the base, said handle being permanently secured to

The above-mentioned decision of the Court of Appeals is important in considering the issues involved in the present case, because in its opinion the court held: (1) That claims 11, 12, and 13 of the patent were valid; (2) that in his claims Crampton had "limited himself to the form, location and functions" of the handle, base, and lever of his assembly; and (3) that he was entitled to only a limited range of equivalents. The opinion of the Court of Appeals is also important because the defendant in the present case contends that its accused device is substantially the same as the device which was held not to infringe the Crampton patent in the former suit.

The handle and operating lever assembly covered by the Crampton patent is accurately and fully described in the appellate court's opinion in the former suit as follows:

"The Crampton patent called for a hollow tube-like mounting escutcheon or spud with a collar fitting against the outside of the flushing tank and a noncircular shoulder adapted to fit into a like-shaped opening in the tank wall. The portion protruding into the tank was threaded to receive a lock nut which clamped the spud immovably to the tank. Protruding outwardly in flangelike form from the collar were lugs over which an annular skirt, which was formed on the handle, telescoped; and about which the handle skirt was rotatable. In the handle socket formed by the skirt, and cast integrally with it, was a boss of the same depth as the skirt and connected therewith by an integral web which fitted between two of the lugs on the mounting escutcheon, and served as a stop member and determined the extent of rotative movement between the handle and stationary escutcheon. This limiting arrangement also controlled the motion of the lever which was permanently fastened to the handle. A second socket formed in the boss itself had the same cross-sectional shape as that of the right angled extension of the operating lever, and received the end thereof which passed from the inside of the tank through the barrel of the spud and into the boss socket. The lever and handle were rigidly and permanently fastened together by upsetting or swaging a portion of the boss into a notch in the lever extension. An ornamental thimble-shaped ferrule of brass with an elongated aperture therein for receiving the lever extension loosely encircled the end of the threaded sleeve or barrel, the end of the barrel being reduced slightly in diameter so that the lock nut could slip over it and the ferrule to the threaded portion of the barrel. This ferrule was engaged by an integral tongue struck out from the lever extension which prevented the spud from slipping out of position before installation.

"The whole assembly was mounted on the tank by passing the lever and end of the barrel through the noncircular opening in the tank and passing a washer and lock nut over the lever and screwing the nut onto the threadings of the barrel and against the inside wall of the flushing tank."

In its opinion the appellate court further stated, 153 F.2d at page 546:

said lever whereby oscillatory movement of the handle imparts similar movement to the lever, and means to prevent separation of the lever and base, whereby said handle, base and lever may be mounted as a unit on said wall and secured thereon by said clamping means, said clamping means being removably engageable with said base without obstruction by said lever."

"13. In combination with a flushing tank actuating lever, a base adapted to be fixedly secured to a flushing tank wall to extend therethrough and having clamping means engageable there-with interiorly of the wall to secure the base to the wall, said base rotatably receiving and limiting the degree of rotation of said lever, a handle mounted on said base exteriorly of the wall for oscillatory movement with reference to the base, said handle being permanently secured to said lever whereby oscillatory movement of the handle imparts similar movement to the lever, and means to prevent separation of the lever and base, whereby said handle, base and lever may be mounted as a unit on said wall and secured thereon by said clamping means."

"The Crampton patent is not a primary or pioneer patent. It 'relates to improvements in handle and operating lever assembly for flushing tanks.' Usable lever arrangements had long been known in the art. Crampton achieved simplicity, compactness, sturdiness and ready mountability, but these achievements were the result of improvements in an old art.

"Crampton is entitled to a limited range of equivalents (The Paper Bag Patent case [Continental Paper Bag Co. v. Eastern Paper Bag Co.], 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122) and, in determining just what he is entitled to, it must be kept in mind that in his claims he has limited himself to the form, location and functions of his handle, base and lever. D'Arcy Spring Co. v. Marshall Vent. Mattress Co., 6 Cir., 259 F. 236. He supplied his own dictionary (Cincinnati Rubber Mfg. Co. v. Stowe-Woodward, Inc., 6 Cir., 111 F.2d 239) to define his understanding of the location and functions of his handle. In the specification he refers to it as a suitable handle which actuates the lever from the exterior of the tank, the mounting of which on the said actuating lever constitutes one feature of the present invention. He thus eliminates entirely the 'spindle' arrangement of the accused device which connects with the lever and actuates it from the inside of the tank. Whether he did this to protect his patent from anticipation by the prior art and especially by Davis, McNeil, Kirk and Clemmons, is not material."

Defendant's accused device comprises a hollow escutcheon or spud[3] with a collar fitting against the exterior wall of the tank and a noncircular shoulder fitting into a like-shaped opening in the tank wall. The hollow or barrel portion of the spud extending into the tank is exteriorly threaded to receive a lock nut which clamps the entire assembly to the tank wall. The handle comprises a laterally turned head and a skirt or apron which telescopes over the collar. A single lug extending radially from the collar fits into an oversized notch in the interior of the skirt, the play of the lug in the notch defining the rotative motion of the handle and the lever. The handle and lever are joined by a hollow, circular spindle, which is integral with the handle and extends from the center of the socket formed by the skirt, through the barrel of the spud or base. The inner end of the spindle is flanged outwardly and staked or swaged to secure the base on the spindle. It should be noted that this swaging is on the interior side of the tank wall. The axial end of the lever is forcibly inserted into the bore of the spindle, with ribs or splines on the lever arm interlocking with grooves in the bore of the spindle, by which means the oscillatory movement of the handle is imparted to the lever arm. Defendant's structures, exhibits 1 and 2, are identical, except that in 1 the inner end of the spindle is staked to the lever arm, while in 2 it is not staked. This is merely a difference in method of assembling.

I now turn to the device which the Court of Appeals in the former suit held did not infringe the claims of the Crampton patent. That device comprised a hollow escutcheon or spud with a collar fitting against the outside of the tank, a noncircular shoulder which fitted into a like opening in the tank wall, and a hollow barrel extending through the spud and into the tank, the inner portion thereof being exteriorly threaded to receive the lock nut which clamped the assembly to the tank wall. The handle had a laterally turned head and a skirt which telescoped over the collar, and a single lug extending radially from the collar and fitting into an oversized notch in the skirt, the play therein defining the rotative motion of the handle and the lever, which were joined by a spindle integral with the handle. This spindle was joined to the actuating lever in the following manner: The axial arm of the lever had a short, laterally turned, tubular portion, with the inner end hexagonal in cross-section. This tubular portion of the lever was designed to fit over the circular tip and over a hexagonal portion of the spindle, the circular tip of the spindle projecting

3. Also referred to in the testimony as a "mounting sleeve," "base" or "barrel."

entirely through the tubular portion of the lever and being upset or swaged so that the lever was firmly fixed to the spindle. Thus, the oscillating motion of the handle was communicated directly to the actuating lever through the spindle, which was integral with the handle.

The device constructed under the Crampton patent, and the defendant's accused device, are both of a simple, sturdy design and can be preassembled in permanent form at the factory. In each device the lever and a part of the barrel can be passed through an opening in the tank wall without disassembling them, and the entire unit can be secured on the tank wall, ready for use, by passing a lock nut over the lever arm and threading the nut onto the barrel so as to clamp the assembly on the wall.

However, as determined by the Court of Appeals in the former suit, Crampton in his claims limited his patent to "the form, location and functions" of the handle, base, and lever of his assembly. In his specifications Crampton referred to a "suitable handle" to actuate the lever from the exterior of the tank, the mounting of the handle on the lever constituting one feature of his invention. The court said he "thus eliminates entirely the 'spindle' arrangement of the accused device which connects with the lever and actuates it from the inside of the tank." Therefore, it is clear that Crampton likewise eliminated the spindle arrangement of the present defendant's accused device, which connects with the lever and actuates it from the interior of the tank.

It should be kept in mind that the Crampton device has no spindle arrangement and that the axial arm of the lever is inserted in a socket in the handle outside and exteriorly of the tank wall, whereas in defendant's accused device the spindle is integral with the handle, and the actuating lever is secured at the inner end of the spindle, interiorly of the tank. In other words, in the Crampton device a portion of the lever rests in the barrel, and the point of swaging of the lever to the handle is on the handle side of the tank, exteriorly of the tank wall, whereas

in defendant's accused device the spindle, which is an integral part of the handle, rests in the barrel, and the point of swaging is interiorly of the tank wall. It is apparent that in the accused device the handle with its integral spindle is retained in assembled relation with the base without the presence of the lever, while in the Crampton device the handle, base, and lever are held in assembly by the insertion of the lever in the handle outside the tank wall. The following statement of the Court of Appeals is directly applicable to this point: "Each of claims 11, 12 and 13 expressly states, among other things, that the base receives the lever, that the handle is mounted on the base exteriorly of the tank wall, and that the handle is permanently secured to the lever. Obviously, if the base receives the lever and if the handle is mounted exteriorly of the base, then the permanent connection referred to must be on the outside of the tank. The chief difficulty with this is that the claims (of the Crampton patent) do not read literally upon the accused construction. The District Court found that the accused structure represented only a colorable departure from Crampton in detail of construction, without change in essential structure. But appellant forcefully points out that the accused construction had as much resemblance to four patents in the prior art, to wit, No. 970,471 to Davis, 1910; No. 1,533,748 to McNeil, 1925; No. 1,638,161 to Kirk, 1927; and No. 1,771,247 to Clemmons, 1930, as to Crampton. In each of these patents the handle was integrally constructed with a spindle which passed through the tank wall for attachment to the lever, and it is obvious that this 'spindle' attachment found in Pleasant-Keller was suggested by the four prior patents. It was certainly not suggested by Crampton for he has no such spindle arrangement. In the accused structure the lever was secured at the end of the spindle at a point at which there had to be strength as well as compactness, to permit the clamping nut to pass thereover. This involved a problem not met with either in Crampton or in the prior art."

In the above-described device held not to infringe in the former suit, the end of

the lever was formed to telescope over the spindle, while in defendant's accused device in the present suit, the end of the lever telescopes into the bore of the spindle. At most, this difference between the device held not to infringe and the defendant's accused device is merely a difference in the method of assembling and joining the spindle and lever. In both devices the spindle was integral with the handle, and the movement of the handle was communicated to the lever through the spindle; in both devices the function of the spindle was in the base. Therefore, as the accused device in the former suit was held not to infringe the Crampton patent, it is obvious that defendant's accused device in the present suit does not infringe such patent. The same basic distinctions which precluded a finding of infringement in the former suit also preclude a finding of infringement in the present suit.

▪ The Crampton patent in suit relates to improvements in the handle and operating lever assembly for flushing tanks, and an improver is entitled only to a narrow range of equivalents. Directoplate Corporation v. Donaldson Lithographing Co., 6 Cir., 51 F.2d 199; Crampton Mfg. Co. v. Crampton, supra. In his claims Crampton limited himself to "the form, location and functions of his handle, base and lever," and he cannot be permitted to depart from the plain meaning of the language he used, so as to claim for it a broad and generic construction. The court concludes that the patent is entitled to only a limited range of equivalents; that defendant's accused device is substantially different from that described in the specified claims; and that the accused device and the component parts thereof are not within the limited range of equivalents accorded the Crampton patent by the Court of Appeals.

▪ Plaintiff adduced testimony indicating the commercial success of the device manufactured under the Crampton patent. Commercial success was given considerable weight in determining the validity of the claims of the Crampton patent in the former suit, but commercial success will not operate to enlarge the limited range of equivalents to which the plaintiff may be entitled in the present case, nor is it determinative of the present question of infringement. Gillette Safety Razor Co. v. Cliff Weil Cigar Co., 4 Cir., 107 F.2d 105.

▪ It is unnecessary to discuss in further detail the claims of the patent in suit relied upon by plaintiff, or to discuss the prior-art patents cited by defendant.[5] Suffice it to say that such claims as interpreted and limited by the Court of Appeals in the former suit do not read upon defendant's accused device. The court is convinced that the accused device does not infringe claims 1, 11, 12, and 13 of the patent in suit, and concludes that plaintiff failed to establish its claims of infringement by defendant.

▪ Having held that claims 1, 11, 12, and 13 of the patent in suit are not infringed, it would seem that to hold such claims valid as against a noninfringer is to decide a hypothetical case. However, in the former suit the majority of the court passed upon the validity of the claims, and this court accordingly concludes that claims 11, 12, and 13 of the patent are valid. The validity of claim 1 was apparently not passed upon in the former case, but the court holds that it is also a valid claim.

### Findings of Fact.

1. Plaintiff is a Michigan corporation with its office and place of business in the city of Holland, Michigan. Defendant is a Michigan corporation with its office and place of business in the city of Grand Rapids, Michigan.

2. Plaintiff is the assignee and present owner of letters patent No. 2,233,159.

5. Walter, 124,178; Walker, 577,897; Tilden, 821,002; Tilden, 915,636; Davis, 970,471; Young et al., 925,550; Meaker, 1,087,542; Meaker, 1,092,586; Bragger, 1,110,251; Lawrence, 1,146,505; Theleen, 1,147,764; Meaker, 1,168,530; Griffiths, 1,203,726; Leslie, 1,500,628; Pasman, 1,519,796; Schulte, 1,524,800; McNeil, 1,533,748; Delaney, 1,604,682; Wright, 1,626,128; Kirk, 1,638,161; Wallace, 1,647,088; Campbell, 1,675,248; Clemmons, 1,771,247; Schulte, 1,799,766; Curtin, 1,811,878; Grimes, 2,097,619.

3. Defendant's accused device, comprising a handle and operating lever assembly for flushing tanks, is substantially different from that described in claims 1, 11, 12, and 13 of the patent in suit.

4. The defendant's accused device and component parts thereof do not fall within the limited range of equivalents allowed under the Crampton patent, nor are they merely colorable departures from the claims of said patent.

5. Defendant's accused device does not infringe the specified claims of plaintiff's patent in suit.

### Conclusions of Law.

1. This court has jurisdiction of the parties and of the subject matter of this suit.

2. Claims 1, 11, 12, and 13 of the patent in suit are valid claims.

3. The defendant's accused device does not infringe the specified claims of the patent in suit.

4. Plaintiff failed to establish infringement of the specified claims of its patent by defendant.

5. Defendant is entitled to a decree dismissing plaintiff's complaint.

6. Defendant is entitled to recover costs.